Michael Kresser appearing for Petitioner Joseph Hayes. We're here seeking this court reverse the denial of Mr. Hayes' habeas petition as a state petitioner. And we are here seeking relief under 28 U.S.C. 2254 D. 1 and 2. And we are strongly contending here that the state court decision that says that our client's confrontation rights were not violated by the admission of a non-testifying co-defendant's confession, that this was contrary to or an unreasonable application of clearly established federal law. But I suppose the issue specifically is the redaction, whether the redaction was sufficient or at least not in violation of Bruton rights. So I think you need to help us sort that out. Why wasn't the redaction sufficient? Well, I'd like to go right to the redacted transcript that does appear in the excerpt of the record starting at page 48. But obviously this statement must be considered closely and as a whole. And what happens in the statement is a non-testifying co-defendant, Mr. Ruiz, he starts talking to the officer and he talks about something, he wants to tell him about something they did. Okay? And this is how we are led into this whole statement. And so the officer starts talking about, what are you talking about? And he starts talking about the shooting in Santa Clara. Something they did. This is at page 48. Something they did. What did they do? Shoot people. Next page. Yes, they were shooting. How do you know about it? They told me. What did they tell you? And then it's established further on, well, you were there. And who's doing the shooting? Page 50. And the officer is referring to, well, these guys just want to get themselves in trouble. These guys, your two homeboys. Okay? So it's identified very clearly by the officer that Mr. Ruiz has identified two accomplices. Well, right. But there's nothing in there that I found, unless you can help direct me to it, that identifies Mr. Hayes. No. What happens is, Your Honor, is that there is, the statement is facially incriminating as to someone, as to two accomplices. He goes through, and the officer establishes how many times you've been with these guys when they do things. Referring to the robbery murder. And he says, well, that was it. But it's not facially incriminating as to Mr. Hayes, is it? Can you re-argue that? Yes. I do believe it is facially incriminating as to, because it sets up clearly that there were two accomplices at the murder. This is the core of the unreasonable application of authority by an unreasonable factual determination by the state court. You look back at the state court decision at page 15. They say the fact that there were three people involved in the robbery murder was not at all completely obvious from the redacted tape. But it certainly was. Because the officer ties it back in and says, well, these were the same two homeboys, right? That you did these things with. Right. And then they start talking about, well, were you mad at Angel? Angel Sierra is always identified. The identity of the second accomplice is never specifically mentioned. All right. So we've got this thing. And then we couple that with the fact that there was a tape that was played to the jury along with the transcript. And the prosecutor himself admitted there were obvious redactions in the tape. The police officer actually testified, yes, there are gaps and omissions in this tape. So they had cut out irrelevant matters. Well, that's what the officer said. That's what the jury heard. That's what the jury heard. But the question is, you know, they'd also received the limiting instruction that you are not to consider this against anybody but Mr. Ruiz. So in that sense, it wasn't relevant under their limiting instruction to Mr. Hayes. So, I mean, but there was – it was obvious that there were alterations to this thing. And – I'm sorry. I was going to say, there are two controlling cases in this area, Richardson and Gray. And I guess the question is, where does this – where does this fit? Why isn't this more like the Richardson case? Well, because in the Richardson case, Your Honor, the statement was so thoroughly redacted that even the existence of the co-defendant in the case was never mentioned. Okay? And so from the tape itself, he didn't incriminate anybody at all. He did incriminate one person who was named, but not anybody else. And so the existence of anybody else other than the declarant and somebody else other than the defendant, the co-defendant sitting there, was never divulged to the jury. And as far as the jury knew, there were only two people involved in this, the confessing person and somebody else other than the co-defendant. So there was no mention of the existence whatsoever. Here in this case, the existence of this second accomplice is completely obvious. It's clear when you put this together that the officer is saying, okay, these guys, when they do things, these two homeboys, and we know one of them is Angel Sierra, and yet the officer in the redacted statement never talks about the other person, though of course we know a lot of that was cut out that did specifically refer to Mr. Hayes. But there was enough left in that it was quite clear he was saying there are two accomplices. Gee, we were mad at Angel. We were mad at Angel because nobody was supposed to get shot. Well, that clearly implicates another accomplice. It's not named. We're here, as I mentioned in an earlier case on habeas review, which, again, is deferential. And I'm wondering if the Court of Appeals, on the Court of Appeals specifically, looked at the Gray and Richardson cases and made a conclusion of law which we have to defer to. Do we not under the AEDPA standard or not? Unless it's unreasonable, Your Honor. If it's unreasonable, then you are authorized and, indeed, directed to issue the writ. If there is an unreasonable application or an unreasonable determination of facts, the key thing to the State court decision was this portion. The fact that there were three people involved in the Hernandez robbery and murder was not at all completely obvious from the redacted tape. That is an unreasonable, if you call it a factual determination, it's an unreasonable factual determination. If you call it a mixed conclusion of law and fact, it's an unreasonable application. You're not arguing it's contrary to Supreme Court cases. You're arguing that it's an unreasonable application to the facts. Quite frankly, Your Honor, I have a difficult time parsing the exact contours of those. But I think in some respects it is directly contrary for this reason. Gray v. Maryland says that redactions that replace a name with an obvious blank space or a word such as deleted or assembled or other similarly obvious indications of alteration, okay, that's where I think they did not apply this because there are obvious signs of alteration. And the State court and, unfortunately, the district court overlooked the fact that the prosecutor admitted to the trial judge that was obviously redacted. The police officer testifies to the jury that they have altered the statement. So in these circumstances where we know that there's two people being tried, Ruiz and Mr. Hayes, Ruiz says three people are involved. One of them is Mr. Ruiz. One is Mr. Sierra, who was not on trial. Then – and it's clear that it has been altered, that the tape has been altered. Then there is – the jury is not stupid. But this is the brutal problem. The jury is not stupid. This is the brutal problem at its core. And then the – what we try to do is to allow the introduction of the testimony so long as it does not unconstitutionally burden the defendant's rights. Right. But this functions, Your Honor, as an accusation by the codefendant with the – with the defendant's rights. And we know from the jury's question during deliberations that they were trying to use that statement against Mr. Hayes. Okay. Mr. Pruden. Good morning, Your Honors. May it please the Court, Glenn Pruden, Deputy Attorney General, on behalf of Warden Runnels. A couple of points I'd like to make at the outset. First of all, Your Honor, this is not a close case as Judge Breyer described it. Although it does fall between Richardson and Gray, we would submit that it falls much closer on that spectrum toward the Richardson case. And also I think it's critical to point out that the jury was properly instructed in this matter, both during the trial itself prior to the testimony of two officers, Officer Chavez and Sergeant Moore. And I would cite the Court to the reporter's transcript at pages 1412 and 1413. That's for Officer Chavez. And reporter's transcript at 1605. In the responsive brief, your adversary says there was a limited instruction given for the first untaped interview, but not for the second taped interview. Your Honor, if you go to those pages, I submit that you will see the instruction that's given talks about the evidence that will be coming in through the witnesses. It does not limit it simply to the first statement that was taken over at Juvenile Hall from Mr. Ruiz. Furthermore, if the Court looks at the clerk's transcript at page 2857, you will see that the jury was given an instruction that says evidence has been admitted against one of the defendants and not admitted against the other. At the time this evidence was admitted, you were admonished that it could not be considered by you against the other defendant. Do not consider such evidence against the other defendant. That was given post-trial. Was it given at the time of the instructions after evidence? Affirmative. That was given at the end, when the judge was instructing the jury. And again, that's found at the clerk's transcript. So the – I just want to have you respond, because you haven't had a chance to. It's in a reply brief. Your position is the limiting instruction was given at the first and not the second, but there was an instruction at the very end of the case which covered both of them, as you interpret it. I'm afraid I didn't make myself clear, Your Honor. The instruction was given – the limiting instruction was given in reference to evidence that was going to be received from the witness, and the witness talked about both statements that were given. And then this was given right up front. And it wasn't limited, the admonishment that was given to the jury prior to the witness testifying about the statements. If you look at the text of that admonishment, it does not limit it to simply the first statement that was given over at Juvenile Hall. It applies – the reasonable interpretation of that is it applies to all evidence that's coming in through this witness. I see your argument. Thank you. And as the Court correctly stated, the issue before this Court this morning is whether or not the California Court of Appeals' rejection of Mr. Hayes' Confrontation Clause claim was neither contrary to nor an unreasonable application of clearly established Federal law. Could I ask you one other question? Yes, sir. That bothers me about the case. Perhaps you can clear it up. As I read the district court's opinion, he says it is not obvious in the transcript, as it was in Gray, that portions of the confessions were redacted. There's nothing in his opinion that indicates he listened to the tape. As I understand it, the jury listened to the tape as well as read the redacted written version. Does the record demonstrate that the district judge listened to the tape? I believe the district judge, if my memory is correct, addressed that when there was a Rule 59 motion filed on this matter. Did he listen to the tape? I believe he did. He said that he did. You understand that. It was submitted. You understand there's an importance to that because he's required, whether the counsel asks him or not, this is very significant evidence. And, of course, what happens in the tape, it was argued by counsel, is different from what happened in the written record. So it's a key point. But nowhere in the briefs does it indicate that he listened to the tape or made a comment on the tape. That issue was raised in the district court, and the district court did say that he had also listened to the tape, if my recollection of his order denying the Rule 59 motion is correct. Can you find that and give us a note on the record so we don't have to go through the whole record to find it? Yes, sir. As you understand, there's at least the opportunity that we might have to remand for him to listen to that tape if we consider it critical. Well, Your Honor, I would submit that the tape itself is not critical in terms of the fact that the redactions track exactly with the transcript. So you can see what the words are, and it's simply the length of the pauses. Well, the length of the pauses, and in here it says inaudible. Well, it's not inaudible. That's just a word used to cut things out of the tape. And unless you listen to the tape, you don't get an idea at all of whether there is something there that is more incriminating or not. I would think under our cases the district judge would be required to review that, whether counsel asked him to or not, but that's another issue. And maybe it's not an issue if you can show us where in the record he listened to the tape. I take it that tape is not here. We've been encouraged by your adversary to listen to the tape ourselves, but I don't think it's ever been brought to us. So we're going to need a little help from you on this. If you could, after you're through with your argument, if you wouldn't mind providing that to us, if you can, before you leave the courthouse. Yes, sir. Or if you wish to have more time, we can just leave the record open for a little while, leave the deferred submission for a while. Yes, sir. I was also surprised because my understanding was that the tape, Exhibit 53, came forward to this court. Well, the question is, did the judge listen to it? That's the question. Yes, sir. We would submit that the redaction, although it suggests that there were multiple people involved, does not unerringly point toward the specific individual that was in the courtroom, being Mr. Hayes. And that's the critical fact under Gray. Isn't that the issue? The Gray thing is they hear something, there's somebody missing, they look. And lo and behold, there's somebody sitting there and they can put two and two together and come up with four. Your position is that that simply isn't so. Absolutely. And how do you respond to counsel's argument where they talk about the two beach boys or whatever they are? The two homeboys. Your Honor, if one reads the redacted transcript from, you know, beginning to end, certainly it's evident that there are at least two other accomplices. Right. There's certainly also a reasonable inference from the transcript itself that there are more people involved. And there is nothing that points directly to the fact that it is solely, you know, two people and one of them being Mr. Sierra and the other one has to be Mr. Hayes. Nowhere is Hayes's name mentioned. I think his argument is more there's three people, you can identify two, and the third one is sitting there at counsel table as a defendant. But the, as I said before, Your Honor, the redacted transcript does not limit to simply two accomplices. We know that there are several folks riding around in the van. You're saying that there isn't really three. There could be five. There could be many. Absolutely, Your Honor. And that, I think, comes through when you read the transcript from end to end. And the way this differs from Gray is that the redactions were very plain in that in terms of the type of alteration that was made to the non-testifying codefendant's statement where they used the word deleted or they lined out and the transcript itself showed it was obvious that a name had been pulled from. When it says in here inaudible, that's the sign that something's deleted. Is that correct? No, Your Honor. That means that on the tape you just can't make out what was said. So there's nothing in here that gives any sort of a signal that there's a deletion in this written record. That's correct, Your Honor. And I would submit that we probably wouldn't even be here if it wasn't for the fact that, you know, there were obvious deletions. But, again, the jury was given a very benign explanation for those deletions. And they were told that simply, you know, matters that were not relevant to the proceeding that was at hand had been omitted. Now, they were told that by a witness. That's correct. Sergeant Moore. So we find out from the witness, we deleted this because they were irrelevant. There wasn't a statement by the court. This was a statement by a witness. That's correct, Your Honor. And furthermore, Your Honor, even if this Court were somehow to find that the State court was in error, we would submit that there also has to be a harmless error determination rendered under Brecht. And certainly there is no harmful error under the Brecht standard. We have plenty of evidence of Mr. Hayes' guilt. There was testimony from other witnesses showing his ---- I see that my time is up. Your time is up. You may complete the thought. Simply that there was ---- there were many points of evidence, and I could detail some of them for the Court if you would like me to continue. Otherwise ---- Thank you, counsel. Mr. Kresser. Yes. Reserve time. Thank you so much. I think it's interesting to note that counsel has admitted that the State court was wrong. He says now his interpretation now of the transcript is, well, yeah, there was indications that there were three involved, but maybe more. But I ask you again, please read that. There is never any indication that there are any other people other than three, Mr. Ruiz and his two homeboys. There's no implication that there's anybody else involved, not at one point in that. And opposing counsel's claim to the contrary, frankly, surprises me. But at least we did get the concession that it is obvious that there were at least three people. As you will recall, the State court decision said, no, it wasn't obvious. So right there, he's basically conceding that the guts of the State court decision in this case were factually wrong, was factually wrong, number one. Number two, I'd like to go back and try to answer one question that you posed. Very quickly. You're running out of time. All right. That you posed, saying, well, even with the redactions, it's not clear that it was Hayes, is it? And that's also the case in Gray. Once the redaction, it was me deleted and some other guys. It's still not obvious that it was Mr. Gray from the face of it, but it was obvious that there was a redaction, that there was a withdrawal, a hiding of identity of a specifically identified individual from the jury. And that's what we have here. Thank you, counsel. Before you sit down, do you have any ñ can you help us on trying to find a reference to whether Judge Breyer listened to the tape? Yes. In his denial of a ñ of the Rule 59 motion, I believe, he addresses the tape in such a fashion that it makes it, I think, pretty clear that he personally did listen to it. He did. Counsel, you ñ do you accept that response? Is that ñ do you concur? I concur. All right. Well, then there's no need to defer submission. The case just submitted ñ just argued will be submitted for decision. Thank you, counsel.
judges: Wallace, Hall, O'Scannlain